May it please the Court. Good morning, Your Honors. William D. Evans, representing plaintiff and appellant in this Title VII case. First of all, by way of introduction, I didn't try this case, and this caused a lot of problems because you see things that you would have done differently if you had been the trial attorney. One of the things I was looking at all along as I went through the transcript was there seemed to be an issue between the motivating factor test and the but-for test that you run into a lot in Title VII cases in mixed motive situations. And as late as the fifth day of trial, after the fifth day of trial, there was a minute order put out that indicated that the Court was going to go along with the defendant's version, which was the but-for test. Then, of course, Guyon was one of the motivating factor tests, and I read over a thousand pages of transcript, and then the sixth day of trial, the Court reversed itself. And so when I was taking this appeal on, I was visualizing the main attack being taking up this incorrect instruction. Well, they gave him the right instruction as far as the plaintiff was concerned, but he still lost. But then there were a number of other issues that get into the evidentiary rulings, and that's the main part of the case here. And there was a lot of discussion in the record about leaving out or excluding testimony of various postal employees, and much of the discussion surrounded separate supervision, whether the plaintiff has to show separate supervision or same supervision with respect to his situation and other situations that come up. And there was quite a bit of controversy over this, and the rulings pretty much, I guess practically all the rulings favored the defendant. So a lot of the witnesses who could have been called on to testify about their situation, about how they were treated better than Mr. Guyon would have been treated, were not disclosed. So what we have here is there's three separate areas to, first of all, whether an evidentiary ruling is harmless or prejudicial. The Obrey case, Obrey v. Johnson, that's the Pearl Harbor Naval Shipyard case, seems to indicate that you have a presumption of prejudice whenever there's an evidentiary ruling. And so we think this is a correct statement of the law. If there had been some confusion before Obrey in some of the cases about what was prejudicial, what was harmless, we think Obrey states it correctly. Now we get into the arguments that the counsel had as they went along, and there was a lot of briefing going back and forth. And basically, the man who tried the case for Guyon was basically saying that he didn't have to disclose that much by way of an offer of proof in justifying whether the evidence should be put on. And the judge kept requiring him to state more and more. But I think what the judge was concerned about was were these other people similarly situated enough to the plaintiff in this case that their testimony would show, I don't know, that show that it was, I guess, there was an inference to be drawn that he was also retaliated against based on his ethnicity. Yes, there was quite a bit of that, and it was brief, too. Now, the thing that struck me in the briefing was that basically Mr. Rolfe, the plaintiff's attorney, was arguing, he was giving the substance of what he was trying to prove, but the court and the defendants wanted him to specify more and more details. But then when I got into the research on the reply brief, all of a sudden I stumbled on Federal Rules of Evidence 102A3, and I treated that fairly extensively in the reply brief. And I couldn't imagine, first of all, I couldn't imagine why this rule wasn't argued in the district court by either side. It seemed to support Mr. Rolfe's theory that he didn't have to be very precise. The rule says that as long as you give the substance of the evidence, then you've complied with the rule. Well, that doesn't say very much. The substance of the evidence is like the gist of what you're trying to prove, and this is basically what Mr. Rolfe seemed to be doing all the way through his colloquy. It's not really the gist of what you're trying to prove. It's what the evidence would show if this witness were to testify. Yes. That's what's expected. Well, you know, there are very few cases, Your Honor, that get into this. And I found a Seventh Circuit case called U.S. v. Pete, which they wound up holding that they don't maybe precisely specify. I think that's the holding in the Seventh Circuit. I couldn't find any cases from any other court that even come close to this situation, which is surprising in dealing with offers of proof. I don't know why it would be the first time we'd take a – in the Ninth Circuit we'd take this kind of case up. In any event, I think it supports what Mr. Rolfe was trying to do. He didn't have to give all this information out. He was being as precise as he could. He didn't answer many questions. But I think as long as he was giving whatever information he had, he was complying. There was one situation for a witness named – a prospective witness named Montgomery. There was going to be some testimony about what his supervisor did to him, and he didn't know the name of the supervisor. Well, finally, he says the supervisor's name was Casalabney. But that didn't satisfy the court either, so the evidence was still never heard. And then one other piece of evidence that has to do with Mr. Braden, he was – it was – evidence would have shown that when he was at some kind of an EEO proceeding that the post office management people were appearing at, and he was appearing at. Someone called him a filthy name. And so I think Mr. Rolfe couldn't identify who that person was. Well, maybe he couldn't name him, but at least it could have been evidence about describing the person who was president for the Postal Service's management personnel at that time. He probably could have gotten the information out that way. But it seemed to me a comment like that would certainly be a discriminatory conduct if they were – So I think the rule 103A2 has to be looked at fairly extensively. And like I say, there's not much case law on this, but I think it should be treated here because it might have made a big difference had it been argued more – had it been pointed out to the court, but yet the rule never was mentioned by either side. So also the – if we go to the substance of the evidence here, and one of the leading grounds of attacking the testimony of Mr. Guinan was that there was no separate – he had to show that there was the same supervision, and I don't think this is the proper basis to do that. I pointed out in the briefs that where – how many supervisors handle personnel matters at the Postal Service? How do you – you have to show that the same supervisor was doing the same thing to someone else, but they don't have similar supervision there, and a large employer like the Postal Service or any large company simply can't be done. And I tried to find the origin of where this same supervisor element came up, and I had trouble finding it. It's cited in the Vasquez case in the Ninth Circuit, but on the other hand, the Tenth Circuit, you see in that case of – the Sprint case that the Supreme Court decided back in the early part of this year, just back in February, that they were thinking that there was a but-for test being made, and it looks strongly like they were rejecting the same supervision test as an element. Well, the Supreme Court finally went and said, well, we have to have fact-specific situations looked at here, so it does cloud it up a little bit, but I think, at least to look at the Tenth Circuit, there's a feeling that separate supervision is not an element. So one other thing is I didn't treat the – 103A2 I didn't put in the opening brief, unfortunately. I only did it in a reply brief. And then these are citations on the separate supervision that I was arguing. There was some case law that I had delved into, which also were not put in the opening brief. So for that reason, I felt a little qualms of guilt. So for that reason, I filed this motion to have the reply brief treated as a supplemental brief so that the other side could comment on it. But to my surprise, when I filed the motion, not only did the government not oppose the motion, but, of course, nothing has been said about what we're talking about concerning Rule 103, evidence Rule 103A2 and the arguments about separate supervision or same supervision. So hopefully I'll hear about that. I'd like to reserve the rest of my time for the rebuttal. All right. Thank you. Good morning, Your Honors. I'm Assistant U.S. Attorney Carla Ford. I'm here representing APALE, the Postmaster General for the Postal Service. I'd like to bring us back to where we are in this case to begin with. We're here after a jury trial took place, after there was pretrial briefing on the issue of which witnesses Mr. Guinan was going to get the opportunity to call at trial. There were also two pretrial conferences at which this very issue was taken up in extensive detail going over it. Which very issue are you talking about, the issue of same supervisor? Well, Your Honor, I was just sort of giving an overview and an introduction about where we are with the case. With respect to the similarly situated rule or issue, in the Ninth Circuit under the Vasquez case, the Ninth Circuit has applied the idea that to be similarly situated, the plaintiff's comparators have to have similar jobs and be subject to similar standards in order to be considered a proper comparator. With respect to the seven witnesses that Mr. — well, really four of the seven witnesses, because four of them, Mr. Ash, Bell, DeVoe — I'm sorry, Ash, Bell, and McCarthy, and there was one other who were allegedly — had work-related injuries. And Mr. Guinan wanted to pose them as comparators to show that he had been retaliated against improperly. And the government objected to those four witnesses as being comparators because they were not similarly situated. They were not similarly situated in several particulars. Chief was the fact that none of them had the extensive history of corrective action that Mr. Guinan had. The closest one that came, I believe, was Mr. Gang, who had a seven-day suspension. But unlike Mr. Guinan, no one else had an eight-day suspension, a 14-day suspension, a 15-day suspension. Add to that, none of them had a last-chance agreement either. And that, according to this Court's ruling in, I believe it was, Leong, the Leong case, where the Ninth Circuit determined that the fact of the last-chance agreement specifically took the comparators out of ability to be compared because none of the comparators had a last-chance agreement like that plaintiff. So from your — from my reading, does it appear or do you know whether — was Judge Baker under a misunderstanding that there was a per se rule as to whether the witnesses had to have the same supervisor? Or was she just comparing whether there's points of similarity in their situations without applying a per se rule? Well, first let me say Judge Baker Fairbank was — I know her as Judge Fairbank — considered each individual — I knew her before she became Judge Fairbank. Oh, I know. No, I'm sorry. I know it's Judge Fairbank now. The judge considered each individual comparator, potential comparator, on its own — on his own merits. She did not apply a per se rule saying that just because they didn't have a supervisor, the same supervisor as Mr. Guinan, that they were necessarily not a comparator. Mr. Dang was a comparator in that regard, and she rejected Mr. Dang as a possible comparator because of the fact that he didn't have the extensive corrective history that Mr. Guinan had. Additionally, Mr. Ash, who's also a truck driver like Mr. Guinan, who had the same supervisor, was rejected for the same reason. So there was — it had to do — Judge Fairbank's decisions as to each individual witness had to do with the specific merits of that witness and whether or not they had sufficient elements as potential comparators to truly be a comparator to Mr. Guinan. And since none of them had that, she felt that the proffer was not complete, the proffer was not relevant because it wasn't complete, and therefore, she felt that admitting it would be improper because it wasn't relevant in the first instance and, secondly, because it might be prejudicial. Now, were these rulings that she made in the pretrial conferences essentially tentative rulings that gave the plaintiff another chance to come in with a showing of foundation? Yes, Judge Schwartz. Judge Fairbank took numerous opportunities throughout the proceedings, pretrial and during the trial, to handle this issue, to give plaintiff's counsel the opportunity to complete a proffer that would be sufficient in the court's judgment. And each time she denied the motion to — or I should say every time she made the order to exclude the witness's testimony, she said it, that it was being done without prejudice, subject to the plaintiff's counsel being able to make a sufficient proffer at a later time. And she did that repeatedly throughout the six-day trial. As respects the fact that Rule 103a2 was never addressed specifically as the authority for what Judge Fairbank was doing, I would say that it's true that a rule didn't come up, but the fact that we didn't mention Rule 103a2 did not mean that the district court didn't apply it. Our position is that Judge Fairbank repeatedly applied the rule and that repeatedly plaintiff's counsel failed to satisfy the court that he was complying with that rule. Now, appellant's counsel has indicated that plaintiff's counsel at trial provided the court with as much information as he had, and I think the overall point is that that information was insufficient. And the fact of a proper proffer doesn't just have to do with telling the court what the witness would say, but it also has to do with informing the court about what the basis is for why this witness's testimony should be accepted as relevant and probative to the ultimate fact in the case. The ultimate fact in this case had to do with whether or not the decision-makers in Mr. Guinan's termination were motivated to do that by their desire to retaliate against him for engaging in protected EEO activity. The standard that we're applying, as the Court well understands, is that though we begin with a prejudice, a presumption of prejudice, in order to overcome that presumption of prejudice, we need to show that the jury would have reached the decision that it did even if the excluded testimony had come in. And I think that we will do that, or that we do do that, because the information even if the witnesses had been allowed to testify about the various things that were proffered, none of the four people who had the work-related injuries had any information to show that Ms. Kelly, Mr. Rodriguez, or Mr. West had any role to play in the discipline that may or may not have been applied to them. And that also points up other problems with the proffers, Your Honor. It was not uniform that each witness that was offered had a complete proffer as to what their history of corrective action was, nor as to whether or not they had also engaged in previous EEO activity. I think Mr. Dang is the only witness that Plaintiff's counsel specifically mentioned, and he has no EEO activity. But even beyond that, when we get to the other three witnesses, Mr. Braden, Mr. DeVoe, and Mr. Montgomery, none of them had information indicating that any of the decision-makers had any role to play in either the incidences that happened to them or what happened to Mr. Gunn. And really, actually, remarkably, with respect to the Mr. Braden and Mr. DeVoe proffers, the fact that there was no identification of who it is in management who either said the epithet or who engaged in the retaliation proves that the proffer was insufficient, because comments can be made errantly, out of context, in different settings by different people for different reasons, and to let that information come in would certainly have been prejudicial without more of a proffer about why they were entitled to testify and why what they were going to say would be relevant. So applying the standard of whether or not that we've overcome the presumption of prejudice, I would say that the government has overcome the presumption of prejudice, but then I would add, as the Court well knows, reversal is not required unless a substantive right has been effected and that there has been prejudice. There has been no substantive right effected by the exclusion of this testimony. There was no prejudice by the exclusion of the testimony, because none of the testimony was going to help the jury assess whether or not the decision-makers were retaliating against Mr. Guinan when they proposed and then finally removed him. And unless the Court has further questions, we submit on the briefs. All right. Thank you, counsel. Thank you. Just a few more comments, Your Honors. The same supervisor rule is also mentioned that it's the same decision-maker. I guess those are taken synonymously here. But in either event, I think that the rule is not sound to have to go through that. It could be an element in some cases, but only if you had a small plan, but not a large facility like the post office, which has operations all over the country. And so I think the Court, this is a good vehicle for the Court to handle this, try to clear up this, apparently, some question about whether same supervision should prevail. Well, did the district court ever base a ruling on a same supervisor rule? Oh, quite, quite, in fact, most of the cases there. Oh, yes. It seemed like a leading element. I can't, I don't know if it was the only reason, but it certainly entered into there in many cases. And I think it should be rejected in particularly a case like this. One other thing, there was a comment made by the fact that Do you think the fact that the circumstances of the complaint, not the complaint, of the witness were different, had anything to do with it? Well, I don't know if you were getting to the fact that he had a long history of discipline. He had a long history of discipline, and the other witnesses that he wanted to bring in didn't. Well, on that, I would say that all those incidents of discipline, they were at issue. He had his own version of them, and the other government had their version, and they were acting like it was a fait accompli, that he was already a malcontent. But actually, every one of those incidents was gone into, and there was a factual question on them. I think it really comes down to whether Rule 403, which has to do with confusing the jury, should that be applied here? I don't think it should be, because you can trust juries more than that by giving this evidence, and they can always reject it. I think it does, it doesn't do, it seems to impugn the jury system if you apply this and cut off so much evidence that could have been used. I think, boiling down to what I was trying to make, repeat what I've said before, had Rule 103.82 been argued here, and particularly with the case that I cited, the U.S. v. Peake case in the Seventh Circuit, and it shows how much, there should be no more than the word used in the Peake case was precisely specified. I think if that had been in front of the court here, it would have been a far different decision, and much more evidence would have been allowed. How many witnesses was the plaintiff able to put on? Oh, let's see. Over 40? Oh, no. I thought it was a large number. It was like, I think about six altogether, and some of them were supervisors. There was only one or two, I think, employee witnesses, where he would have had another seven witnesses had he been able to put that part of the case on. I think this, hopefully this is a good vehicle for the court to decide on this question without separate supervision and the extent to which Rule 103.82 offers the proof should be, what the rule should be, how strict it should be. I have nothing else unless the court has other questions. All right. Thank you so much, counsel. Thank you. Dine-in v. Potter will be submitted. I'll take up.
judges: Farris, Wardlaw, Schwarzer